[Cite as *State v. Wheeler*, 2020-Ohio-6720.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| SOLOMON WHEELER | : | Case No. 2019 CA 124 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Court of Common
                                       Pleas, Case No. 19 CR 184




JUDGMENT:                              Affirmed




DATE OF JUDGMENT:                      December 15, 2020




APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

PAULA M. SAWYERS                       JAMES A. ANZELMO
20 South Second Street                 446 Howland Drive
Fourth Floor                           Gahanna, OH  43230
Newark, OH  43055

*Wise, Earle, J.*

{¶ 1} Defendant-Appellant, Solomon Wheeler, appeals the September 18, 2019 judgment entry of the Court of Common Pleas of Licking County, Ohio, denying his motion to suppress. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 18, 2019, the Licking County Grand Jury indicted appellant on one count of possession of drugs (methamphetamine) in violation of R.C. 2925.11 and one count of trafficking (methamphetamine) in violation of R.C. 2925.03. Said charges arose from a motor vehicle stop for running a stop sign.

{¶ 3} On May 15, 2019, appellant filed a motion to suppress, claiming an illegal search and seizure of the vehicle and his person. A hearing was held on September 9, 2019. By judgment entry filed September 18, 2019, the trial court denied the motion.

{¶ 4} On November 20, 2019, appellant pled no contest to the charges. By judgment entry filed same date, the trial court found appellant guilty, and sentenced him to an aggregate term of two years in prison.

{¶ 5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 6} "THE TRIAL COURT ERRED BY DENYING WHEELER'S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS."

II

{¶ 7}   "WHEELER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10 ARTICLE I OF THE OHIO CONSTITUTION."

I

{¶ 8}   In his first assignment of error, appellant claims the trial court erred in denying his motion to suppress.  We disagree.

{¶ 9}   As stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶ 10} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "...as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 11} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. A traffic stop by law enforcement implicates the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). As our colleagues from the Fourth District stated in *State v. Aguirre,* 4th Dist. Galia No. 03CA5, 2003-Ohio-4909, ¶ 35-36:

The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. * * *

When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. See *State v. Carlson* (1995), 102 Ohio App.3d 585, 598, 657 N.E.2d 591. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the

officer diligently conducted the investigation." *Id.* (citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (fifteen-minute detention reasonable); *United States v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (twenty-minute detention reasonable).

{¶ 12} The two officers involved in the stop, Newark Police Detective Amanda Angles and Newark Police Officer Benjamin Sholl, testified during the suppression hearing. They were conducting traffic enforcement in an area where numerous people were running stop signs. September 9, 2019 T. at 8, 25. Detective Angles, then a police officer, observed a vehicle run a stop sign. The vehicle was being operated by appellant. *Id.* at 9. After calling in appellant's information for verification, dispatch advised he had a suspended license. *Id.* at 10. The passenger in the vehicle also had a suspended license. *Id.* at 11. At this point, standard operating procedure is to remove the individuals from the vehicle because they could not drive away after receiving the citation. *Id.* at 11, 13*.*

{¶ 13} Officer Sholl arrived to assist. As Detective Angles was writing up the citation, Officer Sholl received permission from the vehicle's owner, who had arrived on the scene, to search the vehicle. *Id.* at 11-12, 26. Officer Sholl removed appellant from the vehicle and observed a "large fixed blade knife on his belt loop." *Id.* at 27. When asked if he had any other weapons, appellant responded in the negative. *Id.* Officer Sholl then conducted a pat down for officer safety and discovered a second knife in appellant's left front pocket. *Id.* at 27-28. Officer Sholl worked his way to the right side of appellant's body and observed a black pouch on appellant's belt loop. *Id.* at 29. Concerned it could hold weapons such as razor blades, Officer Sholl asked appellant

about the pouch. *Id.* at 12, 29. Appellant stated it was a cell phone pouch and when asked what was in it, appellant replied "Meth" as in methamphetamine. *Id.* at 13, 29. At that time, Officer Sholl placed appellant in handcuffs. *Id.* at 29. When asked if he had anything else on him, appellant advised he had a small baggy in his pants pocket which appeared to contain methamphetamine. *Id.* at 14, 29-30.

{¶ 14} Appellant received citations for running a stop sign and driving under suspension. *Id.* at 15. On cross-examination, Detective Angles agreed a record of appellant's license for that day shows it was not under suspension. *Id.* at 15-16; Defendant's Exhibit B. Her investigation notes indicate appellant "did not have a valid license" as it was expired. *Id.* at 17; Defendant's Exhibit A. Whether his license was suspended or expired, he would not have been able to drive away and would have been removed from the vehicle and patted down per standard procedure. *Id.* at 22-23.

{¶ 15} In his appellate brief at 6-7, appellant argues he was " 'in custody for practical purposes' during the traffic stop" and therefore he should have been read his *Miranda* rights before being questioned about the contents of the black pouch and any other contraband on his person.

{¶ 16} In its September 18, 2019 judgment entry denying the motion to suppress, the trial court determined the officers could order appellant out of the vehicle which was properly stopped for a traffic violation, even without suspicion of criminal activity. *Pennsylvania v. Minns,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). However, the officers did not automatically have the authority to conduct a pat down search for weapons. The question that needed to be answered was whether the officers had a reasonable, objective basis for conducting the pat down based on the totality of the circumstances. The trial court concluded, "[u]pon seeing a large knife as the defendant

exited the vehicle, the officers then possessed sufficient reasonable objective basis under the totality of the circumstances to frisk for further weapons." The trial court then stated:

> Further, the Court finds the defendant's statements as to what the contents of the black bag were were not statements made in response to custodial interrogation as the defendant had not been placed under arrest, nor was he subject to being interrogated at the time of the frisk. Furthermore, though not questioned, the defendant offered he had methamphetamine in his pocket.

{¶ 17} We note after methamphetamine was retrieved from the black pouch, Officer Sholl did question appellant as to whether he had anything else on him. That is when appellant volunteered he had a baggy in his pants pocket.

{¶ 18} We concur with the trial court that Officer Sholl had a sufficient reasonable objective basis under the totality of the circumstances to frisk appellant for weapons. Appellant had a large fixed blade knife on his belt loop. A pat down for additional weapons was warranted. When asked if he had any additional weapons on his person, appellant was untruthful. It was reasonable for Officer Sholl to ask appellant what was inside the black pouch as it could have contained razor blades or a folded knife. Appellant volunteered that the pouch contained methamphetamine.

{¶ 19} The more troublesome issue is Officer Sholl's question to appellant as to whether he had anything else on him which led to the discovery of additional methamphetamine in appellant's pants pocket. Officer Sholl stated he had placed

appellant in handcuffs prior to asking him the question, but there was no testimony that appellant was under arrest at that time. Detective Angles's report states Officer Sholl asked appellant the question, found the additional methamphetamine, and then placed him in handcuffs "to detain him while we continued the search of the vehicle." Defendant's Exhibit A.

{¶ 20} It is unclear whether the question was asked under a non-custodial situation or after appellant was under arrest. Under a non-custodial situation, appellant volunteered the information. If under arrest, we find the inevitable discovery rule to apply. Under the inevitable discovery rule, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation. (*Nix v. Williams* [1984], 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377, followed.)." *State v. Perkins,* 18 Ohio St.3d 193, 480 N.E.2d 763 (1985), syllabus.

{¶ 21} The discovery of methamphetamine in the black pouch during the lawful pat down would justify placing appellant under arrest. He would have been searched incident to a lawful arrest, and the additional methamphetamine in his pants pocket would have been discovered.

{¶ 22} Upon review, we find the trial court did not err in denying appellant's motion to suppress.

{¶ 23} Assignment of Error I is denied.

II

{¶ 24} In his second assignment of error, appellant claims his trial counsel was ineffective for failing to move for a waiver of court costs. We disagree.

{¶ 25} In *State v. Davis*, 159 Ohio St.3d 31, 146 N.E.3d 560, 2020-Ohio-309, ¶ 1, the Supreme Court of Ohio reviewed the following certified question: "whether trial counsel's failure to file a motion to waive court costs at a defendant's sentencing hearing constitutes ineffective assistance of counsel when the defendant has previously been found indigent."  The Supreme Court of Ohio declined to answer the question "in either the affirmative or the negative," explaining the following (*Id.*):

Rather, a court's finding of ineffective assistance of counsel depends on the facts and circumstances in each case.  *See Strickland v. Washington*, 466 U.S. 668, 688-689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  We hold that when an indigent defendant makes an ineffective-assistance-of-counsel claim based upon counsel's failure to request a waiver of court costs, a reviewing court must apply the test in *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), which adopted the standard that had been announced in *Strickland*, for determining whether a defendant received ineffective assistance of counsel.  If a court analyzes the prejudice prong, then it must consider the facts and circumstances of the case objectively to determine whether the defendant established the necessary prejudice sufficient to support that claim—i.e., but for counsel's deficient performance, there exists a reasonable probability that the result of the proceeding would have been different.

{¶ 26} The Supreme Court of Ohio in *Davis* at ¶ 15 specifically stated, "a determination of indigency alone does not rise to the level of creating a reasonable probability that the trial court would have waived costs had defense counsel moved the court to do so."

{¶ 27} The standard this issue must be measured against is set out in *Bradley, supra*, paragraphs two and three of the syllabus.  Appellant must establish the following:

    2. Counsel's performance will not be deemed ineffective unless and
    until counsel's performance is proved to have fallen below an objective
    standard of reasonable representation and, in addition, prejudice arises
    from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2
    O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S.
    668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

    3. To show that a defendant has been prejudiced by counsel's
    deficient performance, the defendant must prove that there exists a
    reasonable probability that, were it not for counsel's errors, the result of
    the trial would have been different.

{¶ 28} "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra,* at 694.

{¶ 29} As quoted by the *Bradley* court at 143, the *Strickland* court at 697 stated the following:

"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.   In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.   Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result."

{¶ 30} R.C. 2947.23 governs judgment for costs.  Subsection (A)(1)(a) states: "In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs."   However, subsection (C) permits the trial court to retain jurisdiction "to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter."   Therefore, a trial court has discretion to waive the payment of court costs whether a defendant is indigent or not.

{¶ 31} During the sentencing hearing, defense counsel did not request a waiver of court costs; however, defense counsel did request a waiver of the mandatory fine as appellant has "been incarcerated now for almost seven months and, frankly, has no

ability to pay a fine or to privately obtain an attorney for purposes of the appeal." November 20, 2019 T. at 19. The trial court stated, "I'll not impose any fines. I will impose court costs and costs of prosecution." *Id.* at 24. After sentencing, the trial court appointed appellant an attorney for his appeal and ordered the transcripts at state expense. Judgment Entries filed November 25, and December 23, 2019.

{¶ 32} At the time of sentencing, the trial court was cognizant of appellant's indigency status and specifically decided not to impose a fine, but did impose the court costs. Appellant relies on the trial court's decision to not impose a fine to support his argument that there was a reasonable probability that the trial court would have waived costs if a motion had been made. Appellant has not presented any further facts or circumstances to support a finding that there was a reasonable probability that the trial court would have granted a motion to waive costs had one been made.

{¶ 33} The trial court had the benefit of appellant's presentence investigation report and his April 24, 2019 affidavit of indigency. We have objectively reviewed the record and find appellant has not established prejudice to support his claim that but for his counsel's failure to make a motion to waive costs, there exists a reasonable probability that the motion would have been granted.

{¶ 34} As this court did in *State v. Eblin*, 5th Dist. Muskingum No. CT2019-0036, 2020-Ohio-1216, ¶ 21, "[w]e considered, as part of this analysis, whether the trial court's denial of such a motion would have been an abuse of discretion and find nothing within the facts and circumstances of this case that would lead us to find that a failure to grant the motion would constitute an abuse." *Accord State v. Stevens*, 5th Dist. Muskingum Nos. CT2019-0059 & CT2019-0060.

{¶ 35} Upon review, we do not find anything that would support the conclusion that there was a reasonable probability that the outcome would have been different had a motion been filed and therefore, we do not find any prejudice to appellant.  We do not find any ineffective assistance of counsel on the issue of court costs.

{¶ 36} Assignment of Error II is denied.

{¶ 37} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Baldwin, J. concur.

EEW/db