NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-154

THE STATE OF OHIO, APPELLEE, *v.* LEAK, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Leak,* Slip Opinion No. 2016-Ohio-154.]**

*Fourth Amendment—Article I, Section 14, Ohio Constitution—Search and seizure—Arrest of recent occupant of lawfully parked vehicle does not, by itself, establish reasonableness to justify warrantless search of vehicle.*

(No. 2014-1273—Submitted September 16, 2015—Decided January 20, 2016.)

APPEAL from the Court of Appeals for Richland County,

No. 13CA72, 2014-Ohio-2492.

_____

O'NEILL, J.

{¶ 1} Appellant, Quayshaun Leak, was arrested on a warrant following a domestic-violence incident.  Immediately prior to his arrest, he was a passenger in a car legally parked on a public street.  In this case, we are asked to determine whether the warrantless inventory search of a lawfully parked vehicle violates the

Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. We conclude that in this case, it does.

**{¶ 2}** The state urges us to adopt a rule of law stating that the arrest of a recent occupant of a legally parked vehicle establishes an exception to the prohibition of unreasonable searches. We decline to do so. The arrest of a recent occupant of a legally parked vehicle does not, by itself, establish reasonableness to justify a warrantless search of the vehicle the arrestee had been riding in. Accordingly, we reverse the Fifth District's denial of Leak's motion to suppress evidence of the gun that was found in the unlawful search of the car in which Leak had been a passenger, and we vacate his convictions and sentence for carrying a concealed weapon and for improper handling of a firearm.

## I. Case Background

**{¶ 3}** This case comes to us on review of a motion to suppress evidence of the gun that was found in a search of the legally parked car that Leak was sitting in just prior to his arrest on a warrant for domestic violence. On August 8, 2012, the Richland County Sheriff's Office issued an arrest warrant for Leak based on a charge of domestic violence. In order to assist the county in locating Leak, an officer from the Mansfield Police Department was dispatched to the area where Leak's apartment was located.

**{¶ 4}** The officer had a description of the car that Leak was reported to be in, a description of Leak, and his alleged location. The police officer did not have a copy of the warrant. He did not know when or where the alleged domestic violence had occurred. He did not know whether the domestic-violence charge was a misdemeanor or felony charge.

**{¶ 5}** Near Leak's apartment, the officer came upon a car parked behind another car "in an attempt to conceal itself behind that vehicle in the cul-de-sac." Leak was in the passenger seat of the parked car. The officer made contact with

Leak, ordered him out of the car, arrested him, and placed him in the back of his patrol car.

{¶ 6} After Leak was arrested, the officer checked the Law Enforcement Automated Data System and found that the person who was in the driver's seat of the car did not have any outstanding warrants. The officer nevertheless went back to the car, got the driver and the other passenger out of the car, called to request a tow of the car, and conducted an inventory search of the car. During this search, the officer found a handgun under the passenger seat of the car. Leak admitted to the officer that the handgun was his and stated that he had it to protect himself.

{¶ 7} Leak filed a motion to suppress evidence of the gun that was found in the car following his arrest, asserting that the search of the car violated of his Fourth Amendment rights. At the suppression hearing, the arresting officer testified that although he was not certain who owned the car, the only reason he had the car towed was because he believed that Leak owned it. He testified that despite the fact that the person in the driver's seat had no warrants, the officer still had authority to tow the car based on his belief that the owner had been arrested. He further testified that standard procedure is that once a tow truck is called, an inventory search is conducted and a notation is made of all items that are of value or that could be stolen. The officer testified that in this case, he was looking for evidence of a crime in the car because he did not know where the domestic violence had happened.

{¶ 8} The trial court denied Leak's motion to suppress. The court found that there was probable cause to arrest Leak based on the domestic-violence warrant and that pursuant to that arrest, the inventory search of the car prior to towing was proper.

{¶ 9} On June 12, 2013, Leak entered a plea of no contest to the charges of carrying a concealed weapon and improper handling of a firearm. The trial court sentenced Leak to one year on each of the charges, to be served consecutively, and

suspended the sentence. The court put Leak on community control for 30 months and imposed a $1,500 fine.

{¶ 10} On appeal, the Fifth District upheld the validity of the impoundment and search and the denial of the motion to suppress. The court observed that Leak had been identified with the car and, despite the arresting officer's uncertainty of the vehicle's ownership, that the record establishes that at the time of the arrest, the arresting officer believed that Leak owned the car. The court held that the officer's subjective belief in Leak's ownership of the car was sufficient to justify the officer's decision to impound the car, which was done in accordance with department policy. 2014-Ohio-2492, ¶ 16-18.[1]

{¶ 11} Leak appealed to this court, asserting that the mere arrest of an occupant of a lawfully parked vehicle should not automatically trigger police impoundment of that vehicle and that a warrantless inventory search conducted in such a scenario violates the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. We agree.

## II. Analysis

### *Standard of Appellate Review on a Motion to Suppress*

{¶ 12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference

---

[1] Despite the appellate court's finding, there is no evidence in the record of a department policy requiring a vehicle to be towed when its owner is arrested.

to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

*The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution*

**{¶ 13}** The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains almost identical language, and we have interpreted it as affording at least the same protection as the Fourth Amendment. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 238-239, 685 N.E.2d 762 (1997).

**{¶ 14}** "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). " '[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.' " (Brackets sic.) *South Dakota v. Opperman*, 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), quoting *Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

**{¶ 15}** Under the Fourth Amendment, warrantless searches are per se unreasonable without prior approval by a judge or magistrate, subject to only a few specific exceptions. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Two such exceptions are a search incident to a lawful arrest

and an inventory search conducted pursuant to law enforcement's community-caretaking function. Here we will determine whether either of these two exceptions to the Fourth Amendment's warrant requirement justify the search of the car that Leak was sitting in prior to his arrest on a warrant for domestic violence.

*Search Incident to Lawful Arrest*

**{¶ 16}** The first exception we will examine is a search incident to a lawful arrest. This exception has two rationales: officer safety and "safeguarding evidence that the arrestee might conceal or destroy." *State v. Adams*, ___ Ohio St.3d ___, 2015-Ohio-3954, ___ N.E.3d ___, ¶ 182, citing *Gant* at 338-339. It is not unreasonable under the Fourth Amendment for a law-enforcement officer to search a vehicle without a warrant when a recent occupant of the vehicle has been arrested and (1) the arrestee is unsecured and within reaching distance of the vehicle or (2) it is reasonable to believe the vehicle contains evidence of the offense that led to the arrest. *Gant* at 343.

**{¶ 17}** Here, there is no question that Leak was arrested, secured, and not within reaching distance of the car prior to the search of the car. The question then becomes whether it was reasonable to believe that the car contained evidence of Leak's offense of arrest—domestic violence. After examining the record and the arresting officer's testimony at the suppression hearing, we think that it was not.

**{¶ 18}** The arresting officer testified that generally, the same officer who investigates the crime procures the warrant and then searches for and apprehends the suspect. That is not what happened in this case. The officer who arrested Leak on the domestic-violence warrant was not the investigating officer in the domestic-violence case. The arresting officer testified that he was not aware of any specifics relating to the domestic-violence charge. He did not know where or when the crime had happened, he did not know whether it was a misdemeanor or felony charge, and he did not have a physical copy of the arrest warrant. There is nothing in the record that could have established a connection between the car that Leak was

6

sitting in prior to his arrest and the offense for which he was arrested. Accepting these facts as true, we find the officer's belief that the car contained evidence of the domestic-violence charge unreasonable.

{¶ 19} Accordingly, this search fails as a search incident to a lawful arrest under *Gant.*

*Lawful Community-Caretaking Inventory Search*

{¶ 20} We next examine the second exception to the constitutional prohibition on warrantless searches, those conducted in the service of law enforcement's community-caretaking function, which results from the government's extensive regulation of motor vehicles and traffic. *See Cady v. Dombrowski*, 413 U.S. 433, 441-442, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). This function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441. In the interest of public safety, as part of the community-caretaking function of police, vehicles are frequently taken into police custody. *Opperman*, 428 U.S. at 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000, citing *Cady* at 441. Examples of vehicles taken into custody as part of law enforcement's community-caretaking role include those that have been in accidents, that violate parking ordinances, that are stolen or abandoned, and those that cannot be lawfully driven. *See id.* at 368-369. The authority of police to seize and remove from the street vehicles that impede traffic or threaten public safety and convenience is beyond challenge. *Id.* at 369.

{¶ 21} Inventory searches performed pursuant to standard police procedure on vehicles taken into police custody as part of a community-caretaking function are reasonable. *Id.* at 373. There are three main objectives to inventory searches: (1) protecting an individual's property while it is in the custody of the police, (2) protecting the police from claims of lost or stolen property, and (3) protecting the police from danger. *Id*. at 369.

**{¶ 22}** This court has noted that inventory searches of lawfully impounded vehicles are reasonable under the Fourth Amendment when performed in accordance with standard police procedure and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle. *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 11; *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979), citing *Opperman*.

**{¶ 23}** Here, both parties agree that the search of the car was an inventory search incident to towing and impounding the car. Leak asserts that the impoundment was unlawful and that because of this, the search pursuant to the impoundment was unreasonable. The state asserts that the car was lawfully impounded pursuant to police procedure and that the search was a valid exercise of law enforcement's community-caretaking role.[2] Thus, we must determine whether the car was lawfully impounded or whether the impoundment was merely a pretext for an evidentiary search of the impounded car.

**{¶ 24}** Under R.C. 4513.61(A), law-enforcement personnel may order into storage any vehicle that (1) has come into their possession as a result of the performance of their law-enforcement duties or (2) has been left on a public street, property open to the public, or the right-of-way of any road or highway for 48 hours or longer without law enforcement receiving notice of the reasons the vehicle was left. This statute also authorizes the immediate impoundment of vehicles that are obstructing traffic.

**{¶ 25}** Mansfield Codified Ordinances 307.01 authorizes the removal and impounding or booting of a vehicle when it (1) is left unattended and is illegally parked or causes a hazard or obstruction, (2) has been left unattended for more than 48 consecutive hours, (3) is stolen, (4) fails to display a current, lawful plate, (5)

---

[2] Again, there is no evidence in this case of a department procedure requiring impoundment of a vehicle upon its owner's arrest.

has been used in connection with the commission of a felony, (6) has been damaged or wrecked so as to be inoperable, (7) has been left unattended due to the removal of an ill, injured, or arrested operator or due to abandonment by the operator during or immediately after pursuit by law enforcement, (8) has been operated by any person who has failed to stop in case of an accident or collision, (9) has been operated by any person who is driving without a lawful license or while the person's license has been suspended or revoked, (10) is found to have two or more outstanding Traffic Code violations, or (11) is parked without the property owner's permission in such a manner as to prevent entrance or exit.

{¶ 26} Nothing in the record in this case indicates that any of the above-listed circumstances justifying the impoundment of a vehicle existed. It is undisputed that the car in which Leak had been a passenger was legally parked and not impeding traffic or obstructing the roadway. In fact, there was testimony that the car was parked behind another car so that it was concealed. It is also undisputed that Leak was in the passenger seat when the arresting officer approached the car and that the person in the driver's seat of the car had a "clean license." There is nothing in the record to indicate that the car could not be lawfully driven away by the person who was in the driver's seat at the time of Leak's arrest. There is no indication that the car was connected to Leak's offense of arrest. There is no indication in the record that the car had been parked in the same spot in excess of 48 hours. There is no indication in the record that the vehicle was going to be left unattended after Leak's arrest.

{¶ 27} Rather, the record reflects that the only reason the arresting officer had the car towed was his uncertain and unverified belief that he had just arrested its owner. Based on the plain language of the statute and ordinance, we find this belief insufficient to support a reasonable conclusion that the car's impoundment was lawful under R.C. 4513.61 or that Leak's arrest would result in the

abandonment of the car, justifying its impoundment under section 307.01 of the Mansfield Codified Ordinances.

{¶ 28} Further, we can find no evidence, despite statements by the state and the appellate court, of a Mansfield Police Department policy requiring the impoundment of a vehicle after the owner is arrested. We note that the U.S. Supreme Court has left open the possibility that an impoundment may be lawful if it is pursuant to a police department policy based on "standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). In this case, because the officer did not testify to any impoundment policy and no such policy was entered into the record, we have no basis for determining if such a policy could be the lawful basis for impounding a vehicle.

{¶ 29} We recognize and accept as true, as the arresting officer testified, that when a vehicle is impounded, it is standard police procedure to conduct an inventory search and to make a note of all valuables or items in the vehicle that could be stolen. But testimony about the police procedure for conducting the inventory is insufficient to establish the reasonableness of the search under the Fourth Amendment if the impoundment of the vehicle is not itself lawful.

{¶ 30} The inventory search of a vehicle must follow a lawful impoundment of that vehicle and must not be a pretext for an evidentiary search. *Blue Ash*, 113 Ohio St.3d 67, 862 N.E.2d 810, 2007-Ohio-1103, at ¶ 11. In *Blue Ash*, we upheld the validity of the warrantless search of a lawfully impounded car. In that case, the defendant was the driver of the car and the tags on the car and the driver's license were both expired. Additionally, the driver in *Blue Ash* was stopped while traveling on Interstate 71. The car could not safely be left on the side of Interstate 71 or pushed to a safe location. Despite the fact that evidence of an unrelated crime was found in the inventory search incident to towing the car, the facts supported the

legality of the impoundment and demonstrated that the police were reasonably exercising their community-caretaking function and not a criminal investigation.

**{¶ 31}** Here, by contrast, there is nothing in the record to suggest that it was in the interest of public safety to impound or tow this car. Rather, the record in this case presents only the arresting officer's uncertain and unverified belief that he had just arrested the owner of the car.

**{¶ 32}** Under *Blue Ash*, we must also consider whether the evidence demonstrates that the procedure involved was merely a pretext for an evidentiary search of the impounded vehicle. *Id.* The arresting officer testified at the suppression hearing that he "always look[s] for evidence of a crime because [he] didn't know where the domestic violence happened." This testimony undermines the premise that the car was impounded and searched without a warrant for reasons divorced from a criminal investigation; in fact, the testimony is indicative of a pretextual search. The officer was not looking for valuables to safeguard. He was looking for evidence to use against the occupant at his trial on the domestic-violence charges.

**{¶ 33}** In sum, finding no support in the statute or municipal ordinance for a lawful impoundment of the car on the facts of this case, and given the officer's testimony that the sole reason he towed the car was his belief that he had just arrested the owner and that he was looking for evidence of a crime, we conclude that the search of this car was not a reasonable exercise of the officer's community-caretaking role under *Blue Ash*. Because no exception to the prohibition on warrantless searches applies here, we hold that the search of the car in which Leak had been a passenger violated the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

*Remedy*

**{¶ 34}** The exclusionary rule bars the use of evidence secured by an unconstitutional search and seizure. *State v. Johnson*, 141 Ohio St.3d 136, 2014-

Ohio-5021, 22 N.E.3d 1061, ¶ 40, citing *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (announcing the exclusionary rule), and *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (extending the exclusionary rule to the states). Application of the exclusionary rule to evidence found as a result of an unconstitutional search and seizure is not a personal constitutional right to be exercised by the defendant. *Id*., citing *United States v. Davis*, 564 U.S. 229, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011). "[T]he exclusionary rule's 'sole purpose * * * is to deter future violations of the Fourth Amendment[,] and [w]here suppression fails to yield "appreciable deterrence," exclusion is "clearly * * * unwarranted." ' " (Ellipses sic; second set of brackets sic.) *Id.*, quoting *Davis* at 2426-2427, quoting *United States v. Janis*, 433 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

{¶ 35} This court has held that when law-enforcement officers act with a good-faith, objectively reasonable belief based on the state of the law at the time the search was conducted, suppression of the evidence obtained as a result of the search would have no appreciable effect on deterring future violations of the Fourth Amendment, and therefore the good-faith exception to the exclusionary rule applies. *Johnson* at ¶ 50.

{¶ 36} In *Johnson*, this court noted that "exclusion 'exacts a heavy toll on both the judicial system and society at large': it 'requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence' and often 'suppress[es] the truth and set[s] the criminal loose in the community without punishment.' " (Brackets sic.) *Id*. at ¶ 42, quoting *Davis* at 2427. This court went on to observe that " '[w]hen the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.' " (Brackets sic.) *Id*., quoting *Davis* at 2427, quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

{¶ 37} The search of the car in this case was not objectively reasonable under the Fourth Amendment. It was not a reasonable search incident to arrest and was not a reasonable search incident to a lawful impoundment. The arresting officer here testified that he had no specifics regarding the domestic-violence charges, and there is nothing in the record connecting the car to those charges. The fact that the arresting officer used established police procedure to conduct the inventory search does not overcome the unlawfulness of the impoundment in the first place. This is precisely the type of governmental intrusion the Fourth Amendment seeks to prohibit. Permitting the evidence to be used against Leak under the good-faith exception to the exclusionary rule would eviscerate the purpose of the Fourth Amendment's prohibition against unreasonable searches and seizures. The evidence must be excluded.

### III. Conclusion

{¶ 38} Contrary to the court of appeals' holding, ownership of a vehicle that is not implicated in criminal activity is not sufficient to justify an inventory search without a warrant. In short, in this case, ownership of the vehicle was irrelevant. Its status as a legally parked vehicle on a public street was controlling. We hold that the arrest of a recent occupant of a lawfully parked vehicle does not, by itself, establish reasonableness to justify a warrantless search of the vehicle. Accordingly, accepting all of the trial court's findings of fact as true, we conclude that the warrantless search of the car in this case was unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, and we reverse the Fifth District Court of Appeals' denial of Leak's motion to suppress evidence of the gun found during the search of the car following his arrest.

Judgment reversed.

LANZINGER, and KENNEDY, JJ., concur.

FRENCH, J., concurs in judgment only.

O'Connor, C.J., and Pfeifer and O'Donnell, JJ., dissent and would dismiss the cause as improvidently allowed.

_____

Bambi Couch-Page, Richland County Prosecuting Attorney, and Clifford Murphy and John C. Nieft, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Craig M. Jaquith and Eric M. Hedrick, Assistant Public Defenders, for appellant.

_____