[Cite as *State v. Toran*, 2022-Ohio-2796.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210431 |
| | | TRIAL NO. B-1905672 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| JAMIE TORAN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 12, 2022


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brian A. Smith Law Firm, LLC*, and *Brian A. Smith*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}   Defendant-appellant Jamie Toran was arrested and charged with carrying a concealed weapon, improper handling of a firearm in a motor vehicle, and having a weapon while under a disability after police conducted a warrantless search of a vehicle during a traffic stop and found a loaded revolver in the interior panel of the passenger door.   Toran filed a motion to suppress the evidence obtained during the traffic stop, and the trial court overruled the motion after a hearing.   Following Toran's pleas of no contest, the trial court found Toran guilty of the charges and sentenced him to five years of community control.   Toran now appeals.

{¶2}   Although the traffic stop was proper, because the search of the vehicle was not justified under an exception to the Fourth Amendment's warrant requirement, we hold that the trial court erred in denying the motion to suppress, and we reverse the judgment of the trial court.

## I.      The Suppression Hearing

{¶3}   At the suppression hearing, the parties stipulated that the search of the vehicle Toran was driving was conducted without a warrant.   The burden then shifted to the state to establish that the search was nonetheless proper.

{¶4}   Hamilton County Sheriff's Deputy Kevin Singleton testified that he conducted a traffic stop of a Chevrolet truck for improper display of a temporary license placard.   He said that the vehicle had a partially tinted window, and that the temporary license placard was "pushed down" in the bottom right corner of the vehicle's rear window and was "obscured."   Due to the tinting of the window and the positioning of the placard, the deputy testified, the placard was not in plain view.

{¶5}   Toran, the driver, was the sole occupant of the vehicle.   He verbally identified himself to the deputy, but he had no license or government-issued identification on his person.

{¶6}   The deputy verified Toran's identity and learned that he had not had a valid driver's license for three years.   In addition, the deputy learned that Toran had

recently been stopped by another police agency for driving the same vehicle while he was under a license suspension. The deputy cited Toran for driving under suspension and for improper display of a temporary license placard.

{¶7} The deputy determined that the vehicle had to be towed because no licensed driver was present at the scene of the traffic stop to drive the vehicle. The deputy testified:

> Due to the stop and the status [of Toran's suspended license], what our policy is, an inventory search of that vehicle was conducted, any damage, anything. I have been doing this occupation, road patrol, just short of 20 years. I am systematic about how we do the tows because, if there is damage all over the car, valuables can be in the car, and officers need to be accountable.

{¶8} The officer conducted a search of the vehicle and discovered a loaded revolver in the interior panel of the passenger door. Toran was arrested and charged with carrying a concealed weapon, improper handling of a firearm in a motor vehicle, and having a weapon while under a disability.

## II. The Trial Court's Decision

{¶9} The trial court denied the motion to suppress. In its oral comments explaining its decision, the court found that the traffic stop of the vehicle for improper display of a temporary license placard was proper. The court found that because of the tinted window and the positioning of the placard, the officer had probable cause to believe that a violation of the law requiring temporary license placards to be displayed in plain view had occurred.

{¶10} In addition, the court found that the deputy was not able to release the vehicle to Toran because he did not have a driver's license and had previously been stopped driving the vehicle while under suspension. The court determined that the warrantless search was conducted pursuant to the inventory-search exception to the

warrant requirement, and that Toran's Fourth Amendment rights were not violated. The court denied Toran's motion to suppress.

### III.     The Trial Court Erred by Denying the Motion to Suppress

{¶11}  In two assignments of error, Toran argues that the trial court erred in failing to grant his motion to suppress.  In his first assignment of error, he challenges the traffic stop, and in his second, he challenges the vehicle search. He argues that both the stop and the search violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14, of the Ohio Constitution.

{¶12}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id.*

### A.  The Traffic Stop

{¶13}  In his first assignment of error, Toran argues that the trial court erred in overruling his motion to suppress where the traffic stop of his vehicle was not supported by a reasonable articulable suspicion that a traffic violation or other criminal activity had occurred.

{¶14}  The Fourth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *See State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 13. Because a traffic stop constitutes a seizure within the meaning of the Fourth Amendment, the traffic stop must comply with the Fourth Amendment's reasonableness requirement. *State v. Howell*, 2018-Ohio-591, 106 N.E.3d 337, ¶ 11 (1st Dist.); *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

4

**{¶15}** When an officer witnesses a specific violation of the traffic code, a stop of the vehicle is supported by probable cause. *Howell* at ¶ 11. "The test is whether an objectively reasonable police officer would believe that a traffic violation has occurred based upon the totality of the circumstances." *Id.* at ¶ 15, quoting *State v. Cronin*, 1st Dist. Hamilton No. C-100266, 2011-Ohio-1479, ¶ 11.

**{¶16}** In addition, even in the absence of probable cause, an officer may initiate a traffic stop when the officer has a reasonable articulable suspicion that a crime or a traffic violation has been, or is being, committed. *Id.* at ¶ 12; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. An investigatory traffic stop is permitted in such a situation for the officer to confirm or refute her or his suspicions. *Howell* at ¶ 12. A court must examine the totality of the circumstances to determine whether an officer had a reasonable articulable suspicion to initiate a traffic stop. *Id.*

**{¶17}** Probable cause is a stricter standard than reasonable articulable suspicion. *Mays* at ¶ 23. "The former subsumes the latter. * * * An officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop." *Id.*

**{¶18}** Former R.C. 4503.21(A)(3), in effect at the time of Toran's traffic stop, allowed a temporary license placard to be displayed on the rear window of the vehicle if the placard was in plain view from the rear of the vehicle and was not covered by any material that obstructed the placard's visibility:

> No person to whom a temporary license placard or windshield sticker
> has been issued for the use of a motor vehicle under section 4503.182 of
> the Revised Code, and no operator of that motor vehicle, shall fail to
> display the temporary license placard in plain view from the rear of the
> vehicle either in the rear window or on an external rear surface of the
> motor vehicle, or fail to display the windshield sticker in plain view on

5

the rear window of the motor vehicle. No temporary license placard or windshield sticker shall be covered by any material that obstructs its visibility.

{¶19} The Twelfth District recently considered the same version of R.C. 4503.21(A)(3) in *State v. Smith*, 12th Dist. Madison No. CA2021-11-020, 2022-Ohio-2383, ¶ 3, and explained:

"The intent of the law is to require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." *State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455, ¶ 18, citing *State v. Durfee*, 11th Dist. Lake No. 96-L-198, 1998 Ohio App. LEXIS 865, *8 (Mar. 6, 1998). Because of this, the definition of "plain view" as used in that statute contemplates "actually being able to read the letters and numbers" on the temporary license placard being displayed from the rear of one's vehicle. *See Wilmington v. Connor*, 144 Ohio App.3d 735, 739[, 761 N.E.2d 663] (12th Dist.2001) ("[t]he definition of 'plain view' contemplates actually being able to read the letters and numbers on the license plate"), citing *State v. Hanna*, 6th Dist. Williams No. WM-99-016, 2000 Ohio App. LEXIS 879, *7 (Mar. 10, 2000).

{¶20} At the suppression hearing, the deputy testified that he conducted a traffic stop of the truck driven by Toran because of the improper display of a temporary license "plate." He testified that the temporary license placard was pushed down into the bottom right corner of the rear window of the truck's cab and that it was obscured by the tinting of the window. Due to the tinting of the window and the positioning of the placard, he testified that the placard "was absolutely not in plain view" from the rear of the truck.

**{¶21}** Considering the totality of the circumstances, an objectively reasonable police officer would believe that Toran violated former R.C. 4503.21(A)(3) because the temporary license placard was not in plain view from the rear of the vehicle. Therefore, the deputy not only had a reasonable articulable suspicion to stop Toran, but he also had probable cause to believe that a violation of the statute occurred. Therefore, we hold that the trial court properly concluded that the traffic stop was constitutionally valid. We overrule the first assignment of error.

## B. The Vehicle Search

**{¶22}** In his second assignment of error, Toran argues that the trial court erred in failing to grant his motion to suppress because the warrantless vehicle search was not a proper inventory search. He argues that the evidence failed to show that the search was conducted in accordance with standard police procedure, and that the state did not provide evidence of a standardized inventory-search policy.

**{¶23}** The state asserts that Toran failed to raise the issue of an inventory-search policy below and that he cannot raise it on appeal. However, Toran's motion to suppress sufficiently alleged that a warrantless inventory search of his vehicle was conducted during an improper traffic stop. In addition, at the beginning of the suppression hearing, defense counsel asserted that there was no exception to the search-warrant requirement that would allow the deputy to lawfully search the vehicle.

**{¶24}** Moreover, when the parties stipulated that the deputy did not have a search warrant when he searched the vehicle, "[a]t that point, the state had the burden to establish that there was an exception to the warrant requirement that allowed [the deputy] to search the vehicle." *See State v. Beasley*, 1st Dist. Hamilton No. C-180152, 2019-Ohio-3936, ¶ 15. The state had to establish which exception it was relying on; Toran did not have to go forward with any argument or evidence until the state offered evidence of an exception. Here, the state argued below, and the trial court found, that no Fourth Amendment violation occurred because the evidence was discovered during an inventory search of the vehicle.

{¶25} In general, warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few well-established exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An inventory search of a vehicle is one of the well-established exceptions to the Fourth Amendment's warrant requirement. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 20. "An inventory search is not subject to the Fourth Amendment's warrant requirement or a probable-cause review, because it is a search that is made for administrative reasons and is unrelated to a criminal investigation." *Id.* The purpose is to make a record of what is found in and on the vehicle. The inventory search of a vehicle protects an owner's property while it remains in police custody, protects police against claims of lost, stolen, or damaged property, and protects police from dangerous items. *See id.* at ¶ 21; *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

{¶26} An inventory search of a vehicle must follow a lawful impoundment of that vehicle and must not be a pretext for an evidentiary search. *Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, at ¶ 30. An inventory search must be conducted in good faith and in accordance with reasonable standardized procedures or established routines. *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph one of the syllabus. "While those procedures need not be in writing, the state must show that the police department has a standardized routine policy, and that the officer's conduct conformed to that policy." *State v. Smith*, 1st Dist. Hamilton No. C-200352, 2021-Ohio-2654, ¶ 35, quoting *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 66.

{¶27} In *State v. Beasley*, 1st Dist. Hamilton No. C-180152, 2019-Ohio-3936, this court held that the state failed to demonstrate that a warrantless search of a vehicle was conducted pursuant to a proper inventory search where no evidence was presented regarding the police department's inventory-search policy. "The policy was not introduced at the [suppression] hearing, and [the officer] did not testify to its

details." *Beasley* at ¶ 14. We said that, at most, the officer's testimony reflected that his department had a policy under which:

> [W]e inventory the vehicle to make sure that we write down any pertinent belongings that might be in the vehicle so that [an occupant's] objects and items in the vehicle are protected when it goes to the tow lot to make sure all of those items are returned.

*Id.*

**{¶28}** We held that not only was the officer's testimony insufficient, but the video evidence did not indicate "that the officers followed even this 'procedure' as neither officer is seen writing anything down, and no writing was introduced at the hearing." *Id.* We held that without evidence of the department's inventory-search policy, whether by introduction of the policy itself or by an officer's testimony about the policy's details, the state did not meet its burden to demonstrate that an exception to the warrant requirement allowed the officer to search the vehicle. *Id.* at ¶ 15. We reversed the appellant's conviction and the decision of the trial court denying the motion to suppress. *Id.* at ¶ 16.

**{¶29}** Similar to *Beasley*, in this case, the state did not present evidence regarding the policy that the deputy was relying upon for the vehicle search—the policy was not introduced into evidence, and the deputy's testimony did not set forth any details about the sheriff's department inventory-search policy. At most, the deputy's testimony as to a sheriff's department policy, as set forth above, was that he conducted an "inventory search" of the vehicle, that in his nearly 20 years as a patrol officer, he was "systematic about how we do the tows because, if there is damage all over the car, valuables can be in the car, and officers need to be accountable." In short, there was no evidence as to what the policy or procedures were.

**{¶30}** The evidence presented by the state was insufficient to demonstrate that the inventory search of the vehicle was made in accordance with standardized procedures of the sheriff's department. Consequently, the state failed to meet its

burden to demonstrate that there was an exception to the Fourth Amendment's warrant requirement that allowed the deputy to search the vehicle. *See Beasley*, 1st Dist. Hamilton No. C-180152, 2019-Ohio-3936, at ¶ 15. We hold that the deputy's warrantless search of the vehicle was not reasonable under the Fourth Amendment and that the trial court erred by failing to suppress the evidence seized in the search. We sustain the second assignment of error.

## IV. Conclusion

**{¶31}** Consequently, we reverse Toran's convictions and the decision of the trial court denying his motion to suppress. We remand this case for further proceedings in accordance with the law and this opinion.

Judgment reversed and cause remanded.

**BERGERON** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.