[Cite as *State v. Barcus*, 2022-Ohio-2491.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MEGAN BARCUS | : | Case No. 21-CA-94 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 21-CR-0224


JUDGMENT:                       Reversed and Remanded


DATE OF JUDGMENT:               July 19, 2022


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

CLIFFORD J. MURPHY                      STEPHEN T. WOLFE
20 North Second Street                  1350 West 5th Avenue
4th Floor                               Suite 330
Newark, OH  43055                       Columbus, OH  43212

*Wise, Earle, P.J.*

{¶ 1}   Defendant-Appellant, Megan Barcus, appeals the August 25, 2021 denial of her motion to suppress by the Court of Common Pleas of Licking County, Ohio. Plaintiff-Appellee is state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 22, 2021, the Licking County Grand Jury indicted appellant on one count of aggravated possession of methamphetamine in violation of R.C. 2925.11 and one count of aggravated trafficking in methamphetamine in violation of R.C. 2925.03. Said charges arose after a traffic stop and the subsequent search of appellant's person. Appellant was the operator of the motor vehicle and committed a turn signal violation. Also, appellant and her passenger, Jeremy Garcia, had suspended driver's licenses.

{¶ 3}   On June 7, 2021, appellant filed a motion to suppress, claiming an illegal expanded stop and subsequent search of her person.  A hearing was held on August 3, 2021.  By judgment entry filed August 25, 2021, the trial court denied the motion, finding sufficient probable cause to stop the vehicle for a traffic violation and the subsequent pat down search of appellant's person was reasonable.

{¶ 4}   On November 8, 2021, appellant pled no contest to the charges.  By judgment entry filed same date, the trial court found appellant guilty, merged the two counts, and sentenced appellant to an indeterminate term of three to four and a half years in prison.

{¶ 5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶ 6}   "THE TRIAL COURT ERRED IN FINDING THAT THE WARRANTLESS SEARCH OF APPELLANT WAS JUSTIFIED BY EITHER CONSENT, AS A LEGAL *TERRY* STOP, OR PLAIN VIEW."

I

{¶ 7}   In her sole assignment of error, appellant claims the trial court erred in denying her motion to suppress.  We agree.

{¶ 8}   As stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*

{¶ 9}   As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 94 (1996):

We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal.   Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

{¶ 10} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures.  A traffic stop by law enforcement implicates the Fourth Amendment.  *Whren v. United States,* 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

{¶ 11} "To justify a pat down of the driver or a passenger during a traffic stop, * * * the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).  "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable * * *." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).  "Whether that standard is met must be determined from the standpoint of an objectively reasonable

police officer, without reference to the actual motivations of the individual officers involved." *State v. Camp,* 5th Dist. Richland No. 14CA42, 2014-Ohio-329, ¶ 17.

{¶ 12} If the stop is an investigatory stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus; *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 13} We note due to an equipment malfunction, a transcript of the August 3, 2021 suppression hearing is unavailable for our review. On January 31, 2022, appellant filed an App.R. 9(C) statement stating the record of the suppression hearing consists of two exhibits which are videos labeled State's Exhibits 1 and 2, as well as the trial court's statements and findings set forth in its August 25, 2021 judgment entry denying the motion to suppress.

{¶ 14} According to the trial court's August 25, 2021 judgment entry, the trial court heard from three law enforcement officers, Detective Jarrod Conley, Detective Todd Green, and Adult Parole Authority Officer Taban Yeshek.

{¶ 15} Detective Conley first observed Jeremy Garcia operating a motor vehicle. Mr. Garcia parked the vehicle near Thirsty Jake's. Appellant exited this vehicle, entered another vehicle, and drove the vehicle to another location. Detective Conley checked

and found both appellant and Mr. Garcia had suspended driver's licenses. Detective Conley notified patrol deputies that he observed these traffic violations.

{¶ 16} Detective Green was conducting drug surveillance at Thirsty Jake's. He heard Detective Conley's radio call and observed appellant and Mr. Garcia leaving in appellant's vehicle. He followed the vehicle until it stopped. He observed Mr. Garcia exit the vehicle and enter a garage. There were numerous complaints that the garage was being used for drug trafficking. Mr. Garcia exited the garage and returned to the vehicle. Detective Green observed the vehicle drive away and negotiate a turn without signaling. Detective Green was familiar with both appellant and Mr. Garcia from past interactions. He knew Mr. Garcia was on parole at the time and appellant did not have a driver's license. He stopped the vehicle. Detective Green stated his job duty was drug interdiction and not traffic control. He testified "he was concerned about guns in most stops he conducts, and that he would treat it differently than a regular traffic stop." August 25, 2021 Judgment Entry at 2. He further testified "he was familiar with Mr. Garcia, that he was concerned about his possession of a firearm, and that he would desire to pat him down immediately." *Id.*

{¶ 17} State's Exhibit 1 is a video of the stop from a cruiser camera. It does not contain audio between the parties. At 9:48, the vehicle is stopped. At 9:48/9:49, an officer approaches the vehicle, speaks to appellant who was driving, and then appellant and Mr. Garcia exit the vehicle. Appellant is wearing a short crop top and a tight pair of pants with a belt. Her midriff is exposed and her waistband is in plain view. At 9:50, a pat down was conducted of Mr. Garcia. It lasted approximately thirty seconds. No weapons or contraband was found. He was not placed under arrest. At 9:51, a limited pat down was

conducted of appellant. An officer pats down the two front pockets of appellant's pants with the front of his hands. It lasted approximately six seconds. Immediately thereafter appellant pulls a lighter from her front pocket to light her cigarette. Appellant and Mr. Garcia were then directed to lean against the hood of the police cruiser. Their backs are to the camera. At 9:54, a thorough search of the vehicle was conducted pursuant to consent. At 10:00, the officer searching the trunk finds a jacket therein. Appellant asks for her jacket because it was chilly out. After searching the pockets, the officer hands appellant the jacket which she puts on.

{¶ 18} According to the trial court's August 25, 2021 judgment entry, APA Officer Yeshek supervises Mr. Garcia on postrelease control. She was called to the scene and appears at 10:00. At 10:04, Officer Yeshek pats down appellant. The trial court noted "Officer Yeshek testified the defendant was not on supervision, nor did she have a warrant for the defendant. She patted her down for officer safety." August 25, 2021 Judgment Entry at 3. Officer Yeshek "testified the earlier patdown had been done with the back of a hand, whereas she did an actual patdown." *Id.* The trial court noted Officer Yeshek "believed the item she felt was a gun or a knife, and she asked the defendant to lift up her shirt near her belt buckle when she could see the buckle and noticed the contraband." *Id.* "Officer Yeshek testified that she saw a bag by her belt buckle which looked like methamphetamine * * *." *Id.*

{¶ 19} The video of the pat down (State's Exhibit 1) is of little value. At first appellant is facing the hood of the police cruiser with Officer Yeshek standing behind her conducting a very thorough pat down. Appellant is then turned around with her back to the camera, facing Officer Yeshek, and the pat down continues until Officer Yeshek holds

up a bag containing a white substance. It is unclear whether Officer Yeshek places her hand down appellant's pants, but it does appear she is reaching down to retrieve something. The pat down lasts for a full minute.

{¶ 20} State's Exhibit 2 is a video from a second police cruiser, but the cruiser is parked in front of appellant's vehicle. Appellant is behind her vehicle and not in view. The exhibit is of importance because it includes audio of the encounter; however, it is difficult to understand some of the audio due to road noise. The audio at no time indicates appellant was placed under arrest or placed in handcuffs prior to the pat down by Officer Yeshek. The audio reveals the pat down included the removal of appellant's shoes.

{¶ 21} The trial court found "sufficient reasonable suspicion of probable cause to stop the defendant for a turn signal violation, as well as operating a vehicle without a driver's license." In her appellate brief at 9, appellant concurs the stop was reasonable. Having the parties exit the vehicle was not a violation of their Fourth Amendment rights, as "a police officer may order a motorist to get out of a car, which has been properly stopped for a traffic violation, even without suspicion of criminal activity." *State v. Evans,* 67 Ohio St.3d 405, 407, 618 N.E.2d 162 (1993), citing *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

{¶ 22} Officer Green was familiar with Mr. Garcia, knew that he was on parole, and had just observed him exit a garage wherein complained drug trafficking was occurring. Officer Green expressed his concern about Mr. Garcia's possession of a firearm; however, no one expressed similar concerns about appellant. There is nothing in the record before us to indicate the officers had a "reasonable suspicion" that appellant was "armed and dangerous." It appears appellant was patted down because of her

association with Mr. Garcia. As stated by the United States Supreme Court in *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."

{¶ 23} Even in accepting the first cursory pat down of appellant as reasonable for being in the company of Mr. Garcia when he entered and exited the garage, a suspected place for drug trafficking, the second pat down of appellant was improper as it was not supported by reasonable suspicion. There is no indication in the record that appellant was a known criminal, involved in drugs and/or firearms, or was armed and dangerous. There was no testimony of furtive movements between appellant and Mr. Garcia. Nothing was found in the search of appellant's vehicle. While consent was given to search the vehicle, no one is claiming appellant consented to the search of her person. Appellant was never placed under arrest or placed in handcuffs prior to the pat down. In fact, during the fifteen minutes between appellant exiting the vehicle and her pat down by Officer Yeshek, appellant and Mr. Garcia stood around smoking cigarettes and talking and laughing with an officer while another officer searched the vehicle. Appellant was pulled over for a turn signal violation and driving under a suspended license, yet she was subjected to a thorough pat down search without any reasonable suspicion that she was armed and dangerous or any articulable facts of criminal activity. In fact, her pat down was far more intrusive and aggressive (a full minute) than the pat down of Mr. Garcia (thirty seconds) who Officer Green was concerned with.

{¶ 24} Further, in its August 25, 2021 judgment entry at 3, the trial court found "the methamphetamine was found in plain view of the defendant upon being asked to raise

her shirt because of a hard item located under her shirt near her belt buckle." Appellant did not have to raise her shirt because she was wearing a short crop top. Her midriff was exposed and the waistband of her pants was clearly visible. If the bag of methamphetamine was in plain view, it would have been in plain view to the other officers on the scene prior to Officer Yeshek's arrival.

{¶ 25} Upon review, we find the pat down was beyond the pale of reasonableness. The trial court erred in denying the motion to suppress.

{¶ 26} The sole assignment of error is granted.

{¶ 27} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby reversed and the matter is remanded to said court for further proceedings.

By Wise, Earle, P.J.

Delaney, J. and

Baldwin, J. concur.

EEW/db