[Cite as *State v. Griesbaum*, 2017-Ohio-8363.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-A-0029** |
| JOSEPH D. GRIESBAUM, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2016 CR 00142.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Marie Lane,* Ashtabula County Public Defender, Inc., 4817 State Road, #202, Ashtabula, OH 44004 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Joseph D. Griesbaum, appeals the decision of the Ashtabula County Court of Common Pleas, denying his Motion to Suppress. The issue before this court is whether an otherwise valid administrative search warrant for the interior of defendant's premises may be rendered unreasonable by the fact that the defendant had been prosecuted four months earlier for the condition of the exterior of the premises. For the following reasons, we affirm the decision of the court below.

**{¶2}** On April 27, 2016, the Ashtabula County Grand Jury indicted Griesbaum for the following: Illegal Manufacture of Drugs (Count One), a felony of the first degree in violation of R.C. 2925.04(A) and (C)(3)(b); Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs (Count Two), a felony of the second degree in violation of R.C. 2925.041(A) and (C)(2); and Possessing Criminal Tools (Count Three), a felony of the fifth degree in violation of R.C. 2923.24(A).

**{¶3}** On May 9, 2016, Griesbaum appeared for arraignment and entered a plea of not guilty.

**{¶4}** On November 3, 2016, Griesbaum filed a Motion to Suppress. Griesbaum challenged the validity of an Administrative Search Warrant, issued by the Conneaut Municipal Court on March 4, 2016. The Warrant authorized the search of "[t]he residence and any and all garages and accessory structures located at 479 West Jackson Street, Conneaut, Ohio," for "[v]iolations of the Ohio Fire Code section 304.1[1]; 304.2[2]; 304.3.2[3] and violations of the City of Conneaut Zoning, Housing and Building Ordinances and regulations including but not limited to Section 1323.01(j)[4] and 1323.02(a)-(b) pertaining to public nuisances." Conneaut Municipal Ordinance 1323.02 provides:

> (a)     When a reasonable basis to believe that a public nuisance exists, the Planning and Zoning Manager or his/her designee shall inspect or cause the inspection of the premises on which such public nuisance is believed to exist. The Fire Chief and the Health Commissioner may and,

---

1. "Combustible waste material creating a fire hazard shall not be allowed to accumulate in buildings or structures or upon premises." Ohio Adm.Code 1301:7-7-03(D)(1).
2. "Storage of combustible rubbish shall not produce conditions that will create a nuisance or a hazard to the public health, safety or welfare." Ohio Adm.Code 1301:7-7-03(D)(2).
3. "Containers with a capacity exceeding 5.33 cubic feet (40 gallons) (0.15 $m^3$) shall be provided with lids." Ohio Adm.Code 1301:7-7-03(D)(3)(b).
4. Defining, in part, a "public nuisance" to include a residence "[h]aving an accumulation of demolition material, garbage, litter, rubbish or weeds, which accumulation creates a danger to health, life, limb or property" or "[w]hich will cause hurt, harm, discomfort, damage or injury to the public." Conneaut Municipal Ordinance 304.1(j)(1) and (2).

upon request of the Planning and Zoning Manager, shall inspect or cause the inspection of the premises on which a public nuisance is believed to exist.

(b) No owner or occupant of a premises shall permit the existence of a public nuisance to continue on such premises.

{¶5} On December 1, 2016, the State filed its Response.

{¶6} On December 19, 2016, a suppression hearing was held. At the hearing, the following testimony was provided:

{¶7} James Hockaday, Conneaut City Manager, testified that he had received numerous complaints over the course of a year about Griesbaum's property on West Jackson Street. In March 2016, the City sought an administrative search warrant for Griesbaum's property on the grounds that "there was excessive hoarding and junk on the property and * * * reason to believe that the inside of the home had the same issues." Hockaday was aware Griesbaum had already been cited for the exterior condition of the property in December 2015 and was given until April 2016 to remedy the situation. Hockaday had personally viewed the property and noted that debris "continued to accrue or [that the property] was in at least as worse of shape."

{¶8} Steve Sanford, Assistant Fire Chief, viewed Griesbaum's property in early 2016 and observed "combustible materials on the front of the structure or up against the front of the structure." Sanford submitted an affidavit in support of an administrative warrant wherein he stated: "Based upon my experience as a Firefighter and a trained Fire Inspector, it is my experience and opinion that when combustible materials are placed on the exterior of a residence in the abundance and manner as viewed * * * it is indicative of a house which hoards items and similar conditions are typically found inside the house which are fire and life safety hazards."

3

{¶9} Melanie Shubitowski, Assistant Zoning Manager, testified that in 2015 a criminal complaint was filed against Griesbaum on account of his failure to remove "a large amount of furniture, debris, appliances, trash, just all around the perimeter of the home," where Griesbaum lived with his wife and seventeen-year-old son/stepson. The general condition of the property was the same in March 2016 as it was in December 2015. Shubitowski submitted an affidavit in support of an administrative warrant wherein she stated that the condition of the property constituted a public nuisance as the "accumulation of garbage, litter, rubbish * * * creates a danger to health, life, limb or property"; "depreciat[es] the enjoyment and use of properties in the immediate vicinity of the residence"; and raised safety concerns "because much of this accumulated material is flammable and combustible and is susceptible to attracting rodents, vermin and the like." She further stated that, based on the exterior condition of the premises, she "anticipate[d] that the interior of the property also contain[ed] an accumulation of trash, junk, rubbish."

{¶10} Michael Sullivan, Detective, accompanied the zoning inspectors in the execution of the warrant on March 4, 2016. The purpose of this assistance was "to make sure there's no trouble." He described the interior of the home as reflecting "a definite hoarding issue." In a little room created by the partitioning of the garage, Sullivan observed "chemicals to manufacture methamphetamine." At this point, he declared that it was necessary to obtain a search warrant for the property [i.e., a criminal search warrant], but Griesbaum gave consent to continue the search.

{¶11} On January 17, 2017, the trial court denied the Motion to Suppress.

{¶12} On March 2, 2017, Griesbaum entered a plea of no contest to third-degree Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs. As part of

4

the plea agreement, the State moved to dismiss Counts One and Three of the Indictment and to amend Count Two.

{¶13} On April 21, 2017, a sentencing hearing was held. The trial court sentenced Griesbaum to two years Community Control/Intensive Supervision, advised him of post-release control of up to three years, and ordered him to pay court costs.

{¶14} On April 25, 2017, the trial court memorialized Griesbaum's sentence.

{¶15} On May 18, 2017, Griesbaum filed a Notice of Appeal.

{¶16} On appeal, Griesbaum raises the following assignment of error:

{¶17} "[1.] The trial court erroneously overruled Appellant's motion to suppress."

{¶18} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the applicable legal standard." *Id.* The reviewing court must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citation omitted.) *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12; *State v. Orosz*, 11th Dist. Lake No. 2016-L-057, 2017-Ohio-707, ¶ 22 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

{¶19} The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against

5

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶20} The United States Supreme Court has applied the principle that "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant" to municipal fire, health, and housing inspections programs. *Camara v. Municipal Court*, 387 U.S. 523, 528-529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In addition, "[t]o be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing." *Chandler v. Miller*, 520 U.S. 305, 313, 117 S.Ct. 1295, 137 L.E.2d 513 (1997).

> The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant.

*Camara* at 539.

{¶21} Griesbaum contends that "the trial court lacked probable cause in which to issue any warrant" inasmuch as "the inspection contemplated by the administrative warrant was not reasonable under the circumstances, and was not pursuant to an administrative plan containing specific neutral criteria." Appellant's brief at 9.

{¶22} Griesbaum does not challenge the veracity of the affidavits submitted in support of the warrant. Rather, his claim of unreasonableness is based on the fact that the City waited until March 2016 to obtain a warrant based on the condition of his premises when his premises had existed in the same condition since November 2015. According to Griesbaum, any issues the City had with the interior condition of his property should have been addressed when he was cited for the exterior condition of

6

the property. Griesbaum notes that he was cooperative during the process and accepted, in good faith, his sentence to bring his property into compliance with municipal regulations by April 19, 2016. The various explanations proffered by city officials for not seeking a warrant prior to March 2016 are neither convincing nor reasonable. "The timing of the administrative warrant appears arbitrary and fueled by the frustration of the City Manager" in having to deal with Griesbaum. Appellant's brief at 11.

{¶23} Griesbaum's arguments fail to convince that the search of his property was unreasonable. There is no dispute that the exterior condition of his premises in March 2016 gave probable cause to examine their interior condition. *State v. Young*, 6th Dist. Erie No. E-13-011, 2015-Ohio-398, ¶ 46 ("[p]robable cause must be determined as of the date the warrant is requested"). As Griesbaum's counsel acknowledged at the suppression hearing: "And had there not been a complaint filed [in November 2015], had the City just driven by on March 4th or March 3rd and said, this is a problem. We need to take care of it right now. We wouldn't be here. Because it would have been reasonable at that time under the circumstances."

{¶24} There is no authority of which this court is aware that would require the City to obtain a search warrant for the interior of the premises at the time it cited Griesbaum for their exterior condition, or that would grant immunity to him for their interior condition merely because he had until April to remedy their exterior condition. The fact remains that the condition of the exterior of his premises justified an inspection of the interior at the time the warrant issued.

{¶25} Nor does the reason for the City's delay in obtaining the warrant, whether it be frustration or lack of diligence or malice, render the search unreasonable. It is well-

7

established that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively,* justify [the] action.'" (Citation omitted.) *Brigham City v. Stuart*, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). While we acknowledge Griesbaum's conviction that the objective circumstances of this case do not justify the administrative search, we do not share that conviction. The fact that the City could have obtained the warrant in November 2015 did not render it unreasonable to do so in March 2016 where it was nonetheless based on probable cause of an individualized suspicion of wrongdoing.

**{¶26}** The sole assignment of error is without merit.

**{¶27}** For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, denying Griesbaum's Motion to Suppress, is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.