[Cite as *State v. Hawkins*, 2025-Ohio-929.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| JEREMY HAWKINS | : | Case No. 2024 CA 00083 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Court of Common
                                       Pleas, Case No. 2023CR2131




JUDGMENT:                              Affirmed




DATE OF JUDGMENT:                      March 17, 2025




APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

KYLE L. STONE                          ASHLEY E. EJSMONT
PROSECUTING ATTORNEY                   FERNANDO O. MACK
                                       1220 West 6th Street
BY: Christopher A. Piekarski           Cleveland, OH  44113
    110 Central Plaza South, Suite 510
    Canton, OH  44702-1413

*King, J.*

{¶ 1}   Defendant-Appellant Jeremy Hawkins appeals the April 22, 2024 judgment of the Stark County Court of Common Pleas which denied his motion to suppress. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On October 19, 2023, the Stark County Grand Jury returned an indictment charging Hawkins as follows:

{¶ 3}   Count One: Trafficking in cocaine in violation of R.C. 2925.03(A)(2), a felony of the first degree.

{¶ 4}   Count Two: Possession of cocaine in violation of R.C. 2925.11(A), a felony of the first degree.

{¶ 5}   Count Three: Trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2), a felony of the second degree.

{¶ 6}   Count Four: Possession of a fentanyl-related compound in violation of R.C. 2925.11(A)(C)(11)(d), a felony of the second degree.

{¶ 7}   Count Five: Aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the fifth degree.

{¶ 8}   Counts one through four contained major drug offender specifications.

{¶ 9}   The charges arose in September of 2023 after a confidential source (CS) alerted Alliance Police patrol officers that drugs were being stored at a home on Overlook Drive in Alliance, Ohio. A search warrant was executed at the home which produced large quantities of drugs. Hawkins pled not guilty to the charges and filed a motion to suppress. Hawkins' motion argued: 1.) The information from the CS was vague, unreliable hearsay and the affidavit contained no substantiating information to explain the CS's basis of

knowledge, 2.) The warrant was lacking a sufficient nexus between the crime being investigated and Hawkins' home, and 3.) the alleged crimes, and the affidavit for the search warrant lacked probable cause.

{¶ 10} On March 15, 2024, a hearing was held on Hawkins' motion. The trial court viewed an unredacted copy of the affidavit and heard the testimony of Alliance Police Officer Braden Wehrenberg. Wehrenberg testified he was approached by the CS who was previously unknown to the department. The CS stated Hawkins had been dealing drugs for years, was very good at it, and had never been caught. The CS indicated Hawkins usually sold cocaine, but had recently started selling fentanyl. The CS stated Hawkins never sold drugs out of his Alliance home but rather just stored them at the home. He stored his drugs in a black backpack that he kept either in the house or in a Jeep in the driveway. The CS stated Hawkins would purchase large quantities of cocaine and fentanyl and would deliver the drugs to smaller dealers and users in Ravenna, Cleveland, Geauga, and Aurora. The CS explained Hawkins preferred to deliver to one person at a time, returning to the Alliance home in between each delivery to pick up the next. Transcript of Suppression Hearing (T.) 13-17

{¶ 11} On August 27, 2023, the CS provided a video of Hawkins putting the black backpack into the rear compartment of his Jeep which was parked in the driveway of the Alliance home. The CS stated the backpack contained drugs. On September 3, 2023, the CS provided photos and video of Hawkins in possession of drugs. They stated the video was taken on September 3, 2023 at approximately 1:00 a.m. The video shows Hawkins using a large kitchen scale to weigh a gallon-sized plastic bag of white powder which the CS stated was cocaine. On September 4, 2023, the CS met Wehrenberg and provided

him with a single blue pill from Hawkins' fentanyl supply. Testing confirmed the pill was a fentanyl-related compound pressed into pill form. Court's Exhibit A, T. 19-20.

{¶ 12} Officer Wehrenberg installed cameras near Hawkins' property and observed his actions for a week. Hawkins' actions proved consistent with the CS's report; he left his property multiple times during the nighttime hours for varying lengths of time. Additionally, Hawkins was observed checking the Jeep parked in his driveway multiple times per day to be sure it was locked. Wehrenberg could find no verifiable employment for Hawkins but did find that in addition to the Alliance property, Hawkins owned a property in Cleveland and eight vehicles. He therefore believed Hawkins was earning money somehow. After Wehrenberg discovered the Cleveland property, the CS, unprompted, advised that Hawkins had other properties in the Cleveland and Parma areas where he stored drugs. The CS accurately provided the address for the Cleveland property without prompting and further stated Hawkins had been talking to someone about moving the drugs to another location. Court's Exhibit A, T. 14-18, 22-26

{¶ 13} Based on the totality of the information gathered, Wehrenberg believed the CS to be a credible source. Further, concerned that time had become of the essence Wehrenberg applied for a search warrant at the conclusion of one week of surveillance. The warrant was granted and executed. The search produced two large bags of cocaine, a small bag of fentanyl pills, cell phones, notebooks, a scale and $520 cash. T. 25-27.

{¶ 14} At the conclusion of the hearing, the parties were directed to submit their closing arguments in writing. Hawkins filed a supplemental motion to suppress based on the video and unredacted search warrant affidavit which counsel viewed the day of the suppression hearing. The supplemental motion attacked the brevity of the investigation, again challenged the CS's basis of knowledge, and argued the video, surveillance, and

sample pill provided by the CS did not establish a fair probability that drug trafficking was occurring at Hawkins' home. The trial court denied Hawkins' motion to suppress by judgment entry filed April 22, 2024.

{¶ 15} Hawkins filed an appeal and the matter is now before this court for consideration. He raises five assignments of error as follow:

I

{¶ 16} "THE AFFIDAVIT FOR SEARCH WARRANT IN THIS CASE FAILS TO ESTABLISH THE INFORMANT'S BASIS FOR KNOWLEDGE."

II

{¶ 17} "THE AFFIDAVIT FOR SEARCH WARRANT DOES NOT PROVIDE "UNDERLYING CIRCUMSTANCES" TO ESTABLISH THE INFORMANT'S CREDIBILITY, AND THE FACTS PROVIDED BY OFFICER WEHRENBERG IN THE AFFIDAVIT HAVE NOTHING TO DO WITH DRUG TRAFFICKING AND DO NOT LEND CREDIBILITY TO THE CONFIDENTIAL INFORMANT."

III

{¶ 18} "THE INFERENCES INCLUDED IN OFFICER WEHRENBERG'S AFFIDAVIT USURPED THE JUDGE'S INDEPENDENT REVIEW BY OFFICER WEHRENBERG."

IV

{¶ 19} "THE AFFIDAVIT FOR SEARCH WARRANT DID NOT ESTABLISH NEXUS BETWEEN THE LOCATION SEARCHED AND THE CRIME ALLEGED, TO WIT: MR. HAWKINS' HOME AND DRUG TRAFFICKING."

V

{¶ 20} "THE GOOD FAITH EXCEPTION OF THE EXCLUSIONARY RULE SHOULD NOT APPLY IN THIS CASE, AS OFFICER WEHRENBERG KNOWINGLY PRODUCED AN AFFIDAVIT LACKING PROBABLE CAUSE, SUCH THAT OFFICIAL RELIEF IN ITS EXISTENCE IS UNREASONABLE."

I, II, IV

{¶ 21} For ease of discussion, we will address Hawkins' assignments of error together and out of order.

{¶ 22} In his first, second, and fourth assignments of error, Hawkins argues the trial court erred in denying his motion to suppress because the affidavit for the search warrant was based entirely on hearsay thus failing to establish the informant's base of knowledge, failed to provide underlying circumstances to establish the informant's credibility, and was a bare bones affidavit as it failed to establish a nexus between the location to be searched and the alleged crime. We disagree.

Standard of Review

{¶ 23} As stated by the Supreme Court of Ohio in *State v. Leak,* 2016-Ohio-154 ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 2003-Ohio-5372 ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366 (1992). On appeal, we "must accept the trial court's

findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 24} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

Search Warrants

{¶ 25} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio,* 392 U.S. 1, (1968); *State v. Andrews,* 57 Ohio St.3d 86, 87 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George,* 45 Ohio St.3d 325*,* at paragraph one of the syllabus (1980), citing *Illinois v. Gates,* 462 U.S. 213, 238-239 (1983).

{¶ 26} "[C]onsiderations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects

to be seized, and the place to be searched." *State v. Castagnola*, 2015-Ohio-1565, ¶ 34 citing 2 LaFave, Search and Seizure, Section 3.7(a), (b), (d). " 'To establish probable cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search.' " *State v. Marler*, 2009-Ohio-2423, ¶ 26, (2d Dist.) quoting *State v. Freeman*, 2006-Ohio-5020, ¶ 13 (4th Dist.). "The nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence." *State v. Carter*, Greene No. 2011 CA 11, 2011-Ohio-6700, ¶ 10 (2d Dist.), citing *Freeman* at ¶ 13.

{¶ 27} Crim.R. 41(C)(2) provides a finding of probable cause may be based on hearsay – in whole or in part – if there is a substantial basis for believing the source of the hearsay is credible and for believing that there is a factual basis for the information. "A common and acceptable basis for the informant's information is his personal observation of the facts or events described to the affiant. . . .These observations may be given added weight by the extent of the description or by corroborative police surveillance and information." *State v. Karr*, 44 Ohio St.2d 163, 165 (1975).

Hawkins' Complaints

{¶ 28} Hawkins first agues the warrant was deficient because it was based on hearsay information, provided no background as to where the CS received their information and thus no information upon which the issuing judge could make a determination of the CS's credibility. Hawkins' argument is belied by the record.

{¶ 29} While Hawkins argues the affidavit does not indicate the CS had seen Hawkins with drugs, had been in his home, or purchased drugs from Hawkins, he appears to ignore the videos the CS provided to law enforcement. The videos demonstrated the

CS's first-hand knowledge of Hawkins' activities and validated the CS's basis of knowledge and credibility. One video shows Hawkins in his home handling a large amount of cocaine and weighing it on a large kitchen scale which he removed from a black backpack, and the second video shows Hawkins taking the black backpack to and from the Jeep in his driveway. These facts are included in the affidavit at paragraphs four and fifteen. Court's Exhibit A, transcript of suppression hearing (T.) 20-21.

{¶ 30} Hawkins further argues the record is devoid of information regarding the relationship between himself and the CS. However, paragraph 18 of the unredacted affidavit indicates a close, long-term relationship between the two. Court's Exhibit A.

{¶ 31} Hawkins additionally complains no nexus was established between the Alliance home and drug trafficking, surveillance by the Alliance Police Department lasted only a week, and the investigation did not entail any controlled buys. Again, Hawkins appears to ignore the videos. The videos combined with the CS's description of Hawkins' routine activities involving drug deliveries and confirmation of those movements by police surveillance establish a nexus between the items sought and the place to be searched. Moreover, the information provided by the CS specifically indicated Hawkins never sold drugs out of the Alliance home therefore making a controlled buy inappropriate to the investigation. T. 15. Officer Wehrenberg testified the investigation was terminated after a week because the CS indicated Hawkins had been talking to someone about moving the drugs stored at the home. T. 26. There is no requirement that a drug investigation last any set amount of time before a warrant is requested.

{¶ 32} Upon review, we agree with the trial court. The affidavit herein contained credible information relayed to law enforcement by the CS and confirmed by law enforcement's own investigation which was sufficient to justify a conclusion that there was

probable cause to believe Hawkins' Alliance home and vehicles contained cocaine, fentanyl, and evidence of trafficking in the same. Accordingly, Hawkins' first, second, and fourth assignments of error are overruled.

III,V

{¶ 33} Hawkins' third assignment of error argues Officer Wehrenberg's affidavit included a number of inferences which the issuing judge adopted as fact thereby usurping the issuing judge's independent review function. In his fifth assignment of error Hawkins agues the good faith exception should not apply in this case.

{¶ 34} Hawkins failed to raise either of these arguments in the trial court. New arguments will not be considered for the first time on appeal. See *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992) (issues not raised and tried in the trial court cannot be raised for the first time on appeal). Accordingly, Hawkins' third and fifth assignments of error are overruled.

{¶ 35} The judgment of the Stark County Court of Common Pleas is affirmed.


By King, J.,

Baldwin, P.J. and

Gormley, J. concur.