[Cite as *State v. Starkey*, 2026-Ohio-42.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. CT2025-0040 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. CR2024-0149 |
| CODY STARKEY | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: January 8, 2026 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Robert G. Montgomery, Appellate Judges

**APPEARANCES:** JOSEPH A. PALMER, for Plaintiff-Appellee; HARRY R. REINHART, for Defendant-Appellant.

*King, J.*

{¶ 1}   Defendant-Appellant Cody Starkey appeals the March 17, 2025 judgment of conviction and sentence of the Muskingum County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

**Facts and Procedural History**

{¶ 2}   On February 28, 2025, the Muskingum County Grand Jury returned a 19-count indictment charging Starkey and his co-defendant Chiquita Rush with various drug, weapons, and tampering charges. The matter arose following a series of controlled buys using one confidential informant (C.I), at the residence of Starkey and Rush. Relevant to this appeal, after making the controlled buys in this matter, the C.I was caught stealing from the task force and trying to frame an innocent individual in a separate matter.

{¶ 3}  Based on information collected during the controlled buys, the Muskingum County Sheriff's Office Drug Task Force requested a search warrant for the Starkey/Rush residence. The search warrant was signed on February 21, 2025 and executed the following day. At the residence, detectives located marijuana, psilocybin, cocaine, fentanyl, methamphetamine, two handguns, a rifle, currency, and a notebook containing names of those who owed Starkey money. Starkey attempted to dispose of evidence during the search.

{¶ 4}  Starkey pled not guilty to the charges contained in the indictment and on March 21, 2024, filed a motion to unseal the affidavit filed in support of the application for the search warrant. On March 25, 2024, the State filed a certification of nondisclosure pursuant to Crim.R. 16(D)(1) which listed investigative documents and the sealed search warrant affidavit as discovery materials it would not disclose.

{¶ 5}  On March 26, 2024, the State filed a memorandum in opposition of Starkey's motion to unseal the search warrant affidavit citing witness safety concerns. The State further argued that pursuant to the criminal rules, the documents would be made available to defense counsel in counsel only form seven days before trial and then resealed. The following day, the trial court denied Starkey's motion to unseal the affidavit.

{¶ 6}  On April 12, 2024, Starkey filed a motion to suppress the evidence obtained during the search. At the time, defense counsel had not received information from the State regarding the identity of the C.I used in the controlled buys and relied upon to obtain the search warrant. The same day, Starkey fled a motion to compel discovery and requested an in-camera review of evidence which was not provided to the defense as well as evidence designated "counsel only."

{¶ 7}   On July 16, 2024, Starkey filed a supplemental motion to compel discovery. Starkey acknowledged the trial court had previously indicated it would address the matter seven days before trial, but argued seven days would be insufficient. Starkey argued the sealed search warrant affidavit and warrant had not been provided to counsel and accused the assistant prosecutor of gamesmanship in this matter and others handled by the same assistant prosecutor. Supplemental Memorandum in Support of Motion to Compel Discovery filed July 16, 2024, docket item 24, at page three. Counsel further took issue with discovery items marked "counsel only" because the designation prevented counsel "from physically sharing the information with the Defendant." Id. at 6. The State filed a response.

{¶ 8}   On August 5, 2024 a pretrial was held during which Starkey's motion to compel was discussed. Counsel for Starkey requested that at bare minimum, the State could provide the search warrant affidavit with the C.I information redacted. Transcript of August 5, 2025 pretrial (TP) at 4. The trial court ordered the warrant be unsealed. TP 16.

{¶ 9}   On January 6, 2025, a hearing was held on Starkey's suppression motion and his motions to compel. The State advised the trial court it had provided a copy of the warrant to defense counsel immediately after the last hearing and was prepared to provide "the confidential informant packet" that day. Transcript of Suppression (TS) at 6. Counsel for Starkey responded that although he had received the affidavit in support of the search warrant, the documents were redacted and did not contain the name of the C.I. Counsel additionally stated he had a strong suspicion as to who the C.I was, and if he was correct, he would be requesting a continuance in order to supplement his motion

to suppress and to investigate the C.I. TS 8-9. The trial court immediately denied a continuance.

{¶ 10} The State responded that the defense had been in possession of documents provided in discovery and a "*Brady* summary" since at least September, 2024 as well as audio and video evidence of the controlled buys. These documents outlined criminal behavior of the C.I that counsel was interested in focusing on in the suppression hearing. The State opined that based on these disclosures, defense counsel was well aware of the identity of the C.I and had been for months. The State voiced its willingness to stipulate to the identity of the C.I, but its hesitancy to hand over a document with that information because defense counsel had publicly filed a motion in this matter with exhibits consisting of "counsel only" material attached. TS 10-12.

{¶ 11} The trial court ordered the State to provide an unredacted physical copy of the search warrant and affidavit to counsel. TS at 13 and 22. It additionally advised defense counsel "You knew who the informant was. You indicated that to me before. You said it in front of me at an earlier date." TS 16. The record further indicates defense counsel went to the jail to speak with the C.I at some point prior to the suppression hearing. TS at 17.

{¶ 12} The hearing then proceeded directly to the suppression hearing. Defense counsel indicated it was proceeding on the argument that the search was unconstitutional because the warrant issued on an affidavit that contained material omissions; specifically, information suggesting the C.I was unreliable including his prior record and reputation in the community as a pill supplier.

{¶ 13} The sole witness was Detective Ryan Paisley. Relevant here, Detective Paisley testified that at the time the C.I conducted the controlled buys in this matter, he had no reason to believe the C.I was unreliable. TS at 78. The detective additionally testified that audio and video evidence and visual surveillance corroborated the controlled buys made by the C.I in this matter. TS at 87.

{¶ 14} On January 6, 2025, the trial court issued a judgment entry overruling Starkey's motion to suppress. Starkey subsequently entered pleas of no contest to drug, tampering, and weapons charges and was sentenced to an aggregate total of 20 to 25.5 years of incarceration.

{¶ 15} Starkey filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follows:

I

{¶ 16} "THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS BECAUSE THE PROBABLE CAUSE AFFIDAVIT CONTAINED MATERIAL OMISSIONS AND THE CONFIDENTIAL INFORMANT RELIED ON BY THE STATE WAS UNRELIABLE, UNTRUSTWORTHY AND HAD NO HISTORY OF PROVIDING RELIABLE INFORMATION IN THE PAST. DEFENDANT'S RIGHTS TO A FAIR TRIAL AND TO BE FREE FROM UNWARRANTED SEARCHES GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND BY ARTICLE 1, §14 OF THE OHIO CONSTITUTION WERE VIOLATED."

II

{¶ 17} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT A CONTINUANCE IN ORDER FOR COUNSEL TO HAVE AN OPPORTUNITY TO INVESTIGATE THE CONFIDENTIAL INFORMANT'S HISTORY. BY REFUSING THE CONTINUANCE, THE TRIAL COURT DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL AND THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."

I

{¶ 18} In his first assignment of error, Starkey argues the probable cause affidavit supporting the search warrant contained material omissions, that the C.I was unreliable, and that therefore the warrant was obtained in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). Specifically, he argues the affidavit omitted the C.I's prior record, his reputation as a "pill supplier in Zanesville, Ohio," the fact that the C.I had no record of providing reliable information to law enforcement in the past, and that no previous arrests had been made based on information provided by the C.I. We find Starkey's arguments without merit.

**Standard of Review**

{¶ 19} As stated by the Supreme Court of Ohio in *State v. Leak*, 2016-Ohio-154 ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial

court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 20} As the United States Supreme Court held in *Ornelas v. U.S*., 517 U.S. 690, (1996), "…as a general matter determination of reasonable suspicion and probable cause should be reviewed de novo on appeal."

**Search Warrants**

{¶ 21} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found

in a particular place. *State v. George*, 45 Ohio St.3d 325, at paragraph one of the syllabus (1980), citing *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983).

{¶ 22} "[C]onsiderations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *State v. Castagnola*, 2015-Ohio-1565, ¶ 34, citing LaFave, Search and Seizure, Section 3.7(a), (b), (d). "'To establish probable cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search.'" *State v. Marler*, 2009-Ohio-2423, ¶ 26, (2d Dist.) quoting *State v. Freeman*, 2006-Ohio-5020, ¶ 13 (4th Dist.). "The nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence." *State v. Carter*, 2011-Ohio-6700, ¶ 10 (2d Dist.), citing *Freeman* at ¶ 13.

### *Franks v. Delaware*, 438 U.S. 154 (1978)

{¶ 23} In *Franks* the issue was whether a defendant had the right to challenge the veracity of a search warrant affidavit. The United States Supreme Court held "[w]hen the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request." *Id*. syllabus.

{¶ 24} The question addressed in *Franks*, therefore, is not at issue here. While Starkey argues the search warrant was issued in violation of *Franks*, he does not argue,

nor was he denied, an opportunity to challenge the truthfulness of the supporting affidavit. Rather, he appears to challenge the trial court's finding that proper procedures were followed during the controlled buys, that the Detective reasonably believed the C.I was reliable at the time the buys were made, and that there were no relevant omissions regarding the C.I in the probable cause affidavit.

{¶ 25} Starkey complains the affidavit was insufficient because "the only information suggesting reliability was the recitation of several controlled buys." Appellant's brief at 16. This statement is disingenuous. Starkey's assignment of error ignores the fact that there was audio and video documentation of each controlled buy. Moreover, Detective Paisley testified the C.I was monitored not only through audio and video, but via visual surveillance of Starkey's residence during the buys, as well as by a GPS monitor attached to the C.I's vehicle for each buy. The C.I's person and vehicle were searched before and after the controlled buys and the narcotics purchased by the C.I were seized. TS 49-51. The affidavit contained these facts. Defendant's Exhibit A. The C.I's reliability was therefore verified through direct monitoring.

{¶ 26} In support of his position that the C.I was not reliable, Starkey cites *State v. Kiser*, 2025-Ohio-3076 (6th Dist.). But *Kiser* is distinguishable on its facts. In that matter, a search warrant issued solely on the affiant officer's statement that the C.I had provided valid information in the past and that the C.I had indicated he had seen the defendant with a large amount of cocaine within the past 72 hours. *Id.* ¶ 12. Unlike the matter at bar, there were no controlled buys conducted, nor audio or video evidence.

{¶ 27} Finally, Starkey speculates that the C.I's later criminal behavior related to his duties as a C.I must have begun long before he was caught. However, Detective

Paisley testified that after the C.I's malfeasance was discovered, he conducted an audit of previous investigations which utilized the same C.I and produced a report of his findings. State's Exhibit B. Paisley stated he found no reason to doubt the integrity of the investigation in this matter. Paisley further testified he had no reason to doubt the trustworthiness of the C.I until April 2024 and the warrant here was executed in February, 2024. T.S. 53, 56-58.

{¶ 28} Upon review, we agree with the trial court. The affidavit herein contained credible information relayed to law enforcement by the C.I and confirmed by law enforcement's own investigatory techniques which was sufficient to justify a conclusion that the C.I was reliable and there was probable cause to believe the Starkey/Rush home contained drugs and evidence of drug trafficking. Accordingly, the first assignment of error is overruled.

II

{¶ 29} In his final assignment of error, Starkey argues the trial court erred in denying his request for a continuance in order to investigate the C.I. We disagree.

Standard of Review

{¶ 30} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). Therefore, an appellate court must not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id*.; *State v. Wheat*, 2004-Ohio-2088 (5th Dist.).

{¶ 31} "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc*., 19 Ohio St.3d 83, 87 (1985). Most

instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process that would support that decision. *Id*. "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id*.

{¶ 32} In reviewing a trial court's denial of a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and other relevant factors, depending on the unique facts of each case. *State v. Unger*, supra.

{¶ 33} Here, Starkey requested a continuance in order to investigate the C.I and to amend his motion to suppress following the State's disclosure of the identity of the C.I in an in camera hearing pursuant to Crim.R. 16(D)(1). The trial court immediately denied the request stating the case had been pending for nearly a year. TS 8-9. Moreover, both the trial court and the State indicated counsel for Starkey had known the identity of the C.I for at least five months. TS 10, 16.

{¶ 34} While counsel claimed he was not entirely certain of the identity of the C.I, the record belies this claim. Counsel was prepared for the suppression hearing that immediately followed the in camera hearing with a copy of the C.I's criminal record, the

unredacted transcript of the C.I's sentencing hearing following his convictions related to his crimes while working as a C.I, and an unredacted copy of the State's sentencing memorandum in the same matter. TS 16, Defendant's exhibits C, D, and E. Counsel also visited the C.I at the jail before the suppression hearing. TS 17. While Starkey argues a continuance would have been beneficial to him, during the suppression hearing, counsel was in no way limited in challenging the C.I's credibility during the relevant time frame—at the time of the buys in this matter and based on what the Detective knew at that time. TS 76-86, 80-85.

{¶ 35} Finally, in his reply brief, Starkey complains that the State's brief fails to analyze the *Unger* factors. First, we share Starkey's frustration with the State's failure to comply with the appellate rules, its citation to matters outside the record, and its direction to this court to simply read the testimony of a witness rather than providing pinpoint citations to the record. The federal courts have discussed the problems resulting when a party omits important information in its appellate brief noting; "[c]ourts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried in the record.'" *Albrechtsen v. Bd. Of Regents*, 309 F.3d 433 (C.A.7, 2002), quoting *United State v. Dunkel*, 927 F.2d 955, 956 (C.A.7, 1991). The Supreme Court of Ohio, in *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 2006-Ohio-903, at ¶ 13; has also noted:

The omission of page references to the relevant portions of the record that support the brief's factual assertions is most troubling. Appellate attorneys should not expect the court "to peruse the record without the help of pinpoint citations" to the record. *Day v. N. Indiana Pub. Serv. Corp.* (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct. Prac.R. VI(2)(B)(3) requires, the court is forced to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified.

{¶ 36} Nonetheless, a full analysis of each *Unger* factor is unnecessary in this matter as our foregoing analysis pertains to "other relevant factors, depending on the unique facts of each case." *Unger*, supra.

{¶ 37} Having found no abuse of discretion, the final assignment of error is overruled.

{¶ 38} For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed.

{¶ 39} Costs to Appellant.


By: King, J.

Baldwin, P.J. and

Montgomery, J. concur.